IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

**PATRICIA SPURLIN,**

    Plaintiff,

v.     Case No.

**FLOYD COUNTY, GEORGIA,
AKYN BECK, in her individual
capacity, and JAMIE A. McCORD,**     **JURY TRIAL**
**in his official capacity,**     **DEMANDED**

    Defendants.
_____/

## COMPLAINT

Plaintiff Patricia Spurlin brings this Complaint seeking damages and equitable relief against Floyd County, Georgia, Akyn Beck, and Jamie A. McCord for the retaliatory treatment she was subjected to by Defendants, including her termination, because they mistakenly believed that she disclosed potential payroll fraud and theft in the Floyd County Elections Office, constituting violations of laws, rules, and regulations in violation of the First Amendment and the Georgia Whistleblower Act, and in support states the following:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331; jurisdiction over the state claims arises under 28

U.S.C. § 1367.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as the unlawful employment practices alleged in this Complaint were committed in this district and division.

## PARTIES

3. Plaintiff Patricia Spurlin is a citizen of Floyd County, Georgia and submits himself to the jurisdiction of this Court.

4. Spurlin was jointly employed by Floyd County and Express Employment Services in the Floyd County Board of Elections and Registration as an Elections Clerk from May 11, 2020 through her termination on March 17, 2023.

5. At all times relevant, Spurlin was a "public employee" as defined by the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(a)(3).

6. Defendant Floyd County, Georgia is a county located in Georgia.

7. Defendant Floyd County, Georgia is a "public employer" as defined by O.C.G.A. § 45-1-4(a)(4).

8. Floyd County, Georgia is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby and was the public employer of Plaintiff at all times material hereto.

9. Floyd County, Georgia may be served with process pursuant to Rule 4

of the Federal Rules of Civil Procedures by service on Allison Watters, Chair of the Floyd County Board of County Commissioners, 12 East 4th Avenue, Suite 210, Georgia 30161, and is subject to the jurisdiction and venue of this Court.

10. Defendant Akyn Beck is a citizen of Polk County, Georgia and is subject to the jurisdiction of this Court.

11. Defendant Akyn Beck may be served with process pursuant to Rule 4 of the Federal Rules of Civil Procedures by service at 18 East 12th Street, Rome Georgia 30161.

12. Defendant Jamie A. McCord is a citizen of Floyd County, Georgia and is subject to the jurisdiction of this Court.

13. Defendant Jamie A. McCord may be served with process pursuant to Rule 4 of the Federal Rules of Civil Procedures by service at 12 East 4th Avenue, Suite 210, Georgia 30161.

## CONDITIONS PRECEDENT

14. All conditions precedent to this lawsuit, if any, have been satisfied or waived.

## FACTUAL ALLEGATIONS

15. Plaintiff Patricia Spurlin began employment with the Floyd County Board of Elections and Registration ("Board of Elections") as an Election Clerk on May 11, 2020.

3

16. Spurlin obtained her job at the Board of Elections via a placement by a staffing company, Express Employment Services.

17. Throughout Spurlin's tenure at the Board of Elections, the County supervised and oversaw all of her work product; controlled the means and manner of her work; provided her worksite, materials, equipment, and supplies; and her County supervisor was directly responsible for her termination.

18. Express Employment Services was only responsible for issuing Spurlin's weekly paychecks; it did not supervise or direct her work at the Board of Elections in any way.

19. Each week, the employees placed through Express Employment Services would complete timecards, to be signed off by their County supervisor, then submitted to Express.

20. Express would then bill the County for the hours per the contracted hourly rate negotiated by the County and Express.

21. When Spurlin first started at the Elections Office, a Senior Elections Clerk trained her how to do all the tasks necessary to complete the job.

22. Spurlin's tasks as an Elections Clerk included but were not limited to: processing voter registrations; reviewing and updating all voter-registration related systems; processing required forms for poll workers; processing absentee ballot requests; compiling absentee ballot envelopes; preparing spreadsheets for various

precincts for early voting and election day; and communicating with all poll workers and managers during elections.

23. The normal hours for the Elections office was 8:00 a.m. to 5:00 p.m.; Spurlin normally started around 7:30 a.m. each day.

24. Throughout Spurlin's tenure, she worked under the supervision of four different Elections Supervisors or Interim Supervisors employed by Floyd County, the last one was Defendant Akyn Beck.

25. Defendant Floyd County voted to approve Defendant Beck, f/k/a Akyn Bailey, as Elections Supervisor for the Board of Elections on September 27, 2022.

26. A month or so after she became Elections Supervisor, Beck approached Spurlin and told her that she did a great job and Beck asked Spurlin, "if I offer you a job, will you take it?" Spurlin told her that she was very interested in transitioning to a permanent position and Beck told her she would work on it.

27. In or around December 2022, Beck hired her fiancé's brother, Isaiah Beck ("Isaiah")—through Express Employment Services—to work in the Elections Office.

28. After Isaiah started working in the office, Spurlin and her co-workers noticed that he was hardly in the office and the same became true with Defendant Beck.

29. Spurlin routinely saw Isaiah come to the office after 9:00 a.m. and leave

early.

30. Some days, neither Isaiah nor Beck even came into the office with no message to the workers in the office.

31. Routinely, people were trying to reach Beck regarding Elections business and no one could find her.

32. Spurlin and her co-workers also observed Isaiah reporting to work and then immediately walking out a side door to get into a waiting car and only to return hours later.

33. In addition to personally observing Isaiah leave the office or not report at all; Spurlin and her co-workers were aware that he was not in the office because his station was the front window where visitors would be greeted upon entry.

34. Spurlin and her co-workers had to repeatedly go to the front window to address visitors and citizens because Isaiah was not there.

35. Spurlin was often given the task of collecting the timecards for the Express Employment Services placements; she noticed that Isaiah was turning in time for 45-hour work weeks—9 hours each day—when he did not work those hours.

36. Spurlin's co-workers saw his timesheets as well and they were concerned that he was fraudulently claiming—and getting paid by the County for—hours that he did not work.

37. On or around the week of March 7, 2023, Spurlin's co-worker

approached her with an anonymous complaint addressed to the County's Human Resources Director, Darryl Bowie, detailing the suspicious activities of Isaiah and "asking for an investigation into possible fraud due to theft by money and time."

38. The co-worker asked Spurlin if she would agree to giving this letter to Bowie; Spurlin said no because she was afraid of retaliation and needed to keep her job.

39. Early the following week of March 14, 2023, another County worker came to the Elections office and told Spurlin and her co-worker to watch their backs because Beck was livid about an anonymous complaint sent to the County.

40. At that point, Spurlin knew that the co-worker submitted the complaint and feared she had a target on her back; it turns out that Spurlin was right.

41. On Friday, March 17, 2023, Beck called Spurlin into her office and the County Clerk, Erin Elrod, who assists the County Manager, was also present.

42. Beck told Spurlin that she had been doing a great job and appreciated all her hard work but that they did not need her anymore and they were letting her go.

43. Beck then said that Elrod would escort her to her desk and out of the building.

44. Elrod followed Spurlin to her desk and Spurlin asked her what happened and Elrod said, well, you're a "temp."

7

45. Spurlin told her of Beck's promise to transfer her to a County position and Elrod then told Spurlin to apply for future positions in the Elections office.

46. Spurlin called Express when she got home and the owner was shocked that she was fired; he said he was going to call Bowie to find out what happened.

47. The Express owner called Spurlin back and asked if she wrote the anonymous complaint and told her that Beck was livid about it.

48. He also said that the anonymous complaint went "all the way to the top."

49. A couple weeks after Beck fired Spurlin, Isaiah transferred to a full time county employee at Beck's request.

50. No one ever interviewed Spurlin regarding the allegations in the anonymous complaint.

51. No other workers in the Elections office were interviewed about the allegations in the anonymous complaint until after Spurlin was fired and Isaiah hired as a direct County employee.

52. Plaintiff has suffered lost wages and emotional distress due to the retaliatory treatment in the workplace.

53. Plaintiff has had to retain counsel to vindicate her rights in this matter and owes reasonable attorneys' fees.

## COUNT I: RETALIATION
## FIRST AMENDMENT
## 42 U.S.C. § 1983
## (Defendant Beck in her individual capacity)

54.     Plaintiff re-alleges the allegations contained in paragraphs 1-53.

55.     Defendant Beck retaliated against Spurlin in violation of the First Amendment to the Constitution of the United States when Beck fired her in retaliation for complaining about fraud and theft of time and money from the County.

56.     That Beck mistakenly believed that Spurlin was the one who complained about fraud and theft of time and money from the County does not absolve her from liability.

57.     Fraud and theft of time and money from the County are matters of public concern.

58.     The reporting of fraud and theft of time and money from the County was outside Spurlin's duties as an Elections Clerk.

59.     Spurlin's termination was causally connected to the protected speech.

60.     At all times relevant to this count, Defendant Beck was acting under color of state law and within the scope of her discretionary functions as the Elections Supervisor of Floyd County, Georgia.

61.     Acting under color and authority of state law, Defendant Beck violated Plaintiff's First Amendment rights by retaliating against her and terminating her employment.

62. Pre-existing law gave Beck fair warning that her actions violated Plaintiff's Constitutional rights.

63. As a direct and proximate result of Defendant Beck's unlawful acts, Plaintiff suffered injuries for which they are entitled to recover equitable relief and compensatory damages, including economic losses and emotional distress, attorney's fees, and costs of litigation.

64. Defendant Beck acted intentionally, willfully, maliciously, and oppressively, thereby entitling Plaintiff to an award of punitive damages to be determined by the enlightened conscience of the jury.

### COUNT II: RETALIATION
### FIRST AMENDMENT
### 42 U.S.C. § 1983
### (Defendant Jamie A. McCord in his official capacity)

65. Plaintiff re-alleges the allegations contained in paragraphs 1-53.

66. The County mistakenly believed that Spurlin exercised her First Amendment rights by complaining about fraud and theft of time and money from the County.

67. The County terminated Spurlin in retaliation for the complaint about fraud and theft of time and money from the County in violation of the First Amendment.

68. Fraud and theft of time and money from the County are matters of public concern.

69. The reporting of fraud and theft of time and money from the County was outside Spurlin's duties as an Elections Clerk.

70. Spurlin's termination was causally connected to the protected speech.

71. The acts of the County as described herein were taken under color of state law, custom, or usage.

72. The acts of the County as described herein were purposeful and arise from an official policy or custom.

73. Plaintiff is entitled to equitable and ancillary relief to remedy the violations described above.

74. In addition, Plaintiff is entitled to recover attorney's fees and costs as a result of Defendant's actions.

## COUNT III: RETALIATION
## GEORGIA WHISTLEBLOWER ACT
## O.C.G.A. § 45-1-4
## (Defendant Floyd County)

75. Plaintiff re-alleges the allegations contained in paragraphs 1-53.

76. At all times relevant to this action, Spurlin was a public employee as that term is defined by O.C.G.A. § 45-1-4(a)(3).

77. At all times relevant to this action, Defendant Floyd County was Spurlin's employer and was a "public employer" as defined by O.C.G.A. § 45-1-4(a)(4).

78. Defendant mistakenly believed that Spurlin exposed and disclosed

11

violations of laws, rules, and regulations constituting fraud, waste, and abuse by the Defendant Floyd County.

79. In retaliation for the disclosures, Defendant Floyd County fired the Plaintiff.

80. The adverse actions are causally connected to their protected conduct.

81. Instead of insuring that the Floyd County complied with the Georgia Whistleblower Act, Defendant actively sought to violate the Act.

82. As a direct and proximate result of Defendant City of Jonesboro's unlawful employment practices, Plaintiff suffered injuries for which she is entitled to recover equitable relief and compensatory damages, including economic losses and emotional distress, attorney's fees, and costs of litigation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully pray that this Court:

a. Assume jurisdiction over this action;

b. Award judgment against Defendants and for the Plaintiff;

c. Award Plaintiff economic damages;

d. Award Plaintiff compensatory damages for pain and suffering, mental and emotional distress, anxiety, humiliation, and any other injury in an amount to be determined by the enlightened conscience of the jury;

e. Award Plaintiff punitive damages against Defendant Beck in an amount

to be determined by the enlightened conscience of the jury to deter Defendant and others from similar misconduct in the future;

f. Award injunctive relief, reinstating Plaintiff, and such other and further equitable relief as is just;

g. Award Plaintiff reasonable attorney's fees, expenses, and costs of litigation;

h. Award Plaintiff pre and post-judgment interest;

i. Award Plaintiff such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 13th day of March 2024,

   **Lisa C. Lambert**
Lisa C. Lambert
Georgia Bar No. 142135
Law Office of Lisa C. Lambert
245 N. Highland Avenue, Suite 230-139
Atlanta, Georgia 30307
404-556-8759
lisa@civil-rights.attorney

Cheryl B. Legare
Georgia Bar No. 038553
LEGARE, ATTWOOD & WOLFE, LLC
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: 470-823-4000
Facsimile: 470-201-1212
cblegare@law-llc.com

13